IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Infogroup, Inc., <br><br>　　　　Plaintiff and Counterclaim-defendant, <br><br>vs. <br><br>DatabaseUSA.com LLC, <br><br>　　　　Defendant and Counterclaimant, <br><br>Vinod Gupta, <br><br>　　　　Defendant. | 8:14-CV-49 <br><br><br><br><br><br>MEMORANDUM AND ORDER |

This matter is before the Court on defendants DatabaseUSA's and Vinod Gupta's (collectively, "DatabaseUSA") motions in limine, (filing 337, filing 406), Infogroup's motion in limine (filing 404), and Infogroup's motion to determine admissibility (filing 404). As set forth below, the Court will grant those motions in part, and deny those motions in part.

I. INFOGROUP'S MOTIONS

*A. DatabaseUSA's Failure to Disclose its Damages Computations for its Counterclaims*

To begin, Infogroup objects to any "reference to monetary damages relating to [DatabaseUSA's] counterclaims." Filing 404 at 1. According to Infogroup, DatabaseUSA has yet to disclose *any*, much less sufficient,

information concerning their purported monetary damages computation. And DatabaseUSA admitted that—at least as of the date of the hearing at the pretrial conference—it had not, in fact, disclosed this information.

DatabaseUSA was required to disclose "a computation of each category of damages claimed" in its initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii). DatabaseUSA was also required to supplement those disclosures if, at any point during discovery, the initial disclosure was no longer complete or correct. Fed. R. Civ. P. 26(e)(1)(A). And under Fed. R. Civ. P. 37(c)(1), exclusion of evidence not disclosed is appropriate unless a party shows that failure to comply with Rule 26(a) or 26(e) was substantially justified or harmless.

To determine whether a failure to disclose was justified or harmless the Court considers four factors: (1) the importance of the excluded material; (2) the explanation for failing to comply with the disclosure rules; (3) the potential prejudice from allowing the material to be used at trial; and (4) the availability of a continuance to cure such prejudice. *Citizens Bank v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1994). All the available factors weigh against DatabaseUSA—which offered the court no reason as to why it did not, or could not, disclose its computation of damages. In other words, DatabaseUSA's failure to disclose its counterclaim damages was neither substantially justified nor harmless. As such, the Court <u>will grant</u> Infogroup's motion in limine on this issue.

### B. Blake Van Gilder

Infogroup seeks to exclude any and all "reference[s] to claims asserted against Blake Van Gilder, Infogroup or Koley Jessen P.C., L.L.O., or its attorneys, in DatabaseUSA.com, LLC's suit against Infogroup and Koley Jessen . . . ." Filing 404 at 1. Infogroup also seeks to preclude evidence of

"Blake Van Gilder's non-felony criminal convictions or arrests, or his mental and emotional conditions and treatments."

The Court will grant that motion in part, and deny that motion in part. In particular, Van Gilder's felony escape conviction is admissible under [Fed. R. Evid. 609](), but any reference to Van Gilder's other non-felony criminal convictions, arrests, mental health struggles, or the lawsuit will be precluded under [Fed. R. Evid. 401]() and 403.

### C. Adverse Jury Instruction

Infogroup also moves to determine admissibility of evidence pertaining to the adverse jury instruction. To be clear, the Court will be giving an adverse jury instruction, but *precisely* how the Court will instruct the jury on the adverse inference is a matter the Court will take up with jury instructions. The Court will, however, provide the parties with some guidance as to the principles that will govern that instruction. To begin, the language of the adverse inference will not instruct the jury that they "must" determine that the destruction was intentional, nor will the jury be informed that the Court has found that the destruction was intentional. Instead, the jury will be allowed, but not required, to draw an adverse inference. *See [Stevenson v. Union Pac. R. Co.,]() 354 F.3d 739, 750 (8th Cir. 2004)*.

And that presumption is subject to *reasonable* rebuttal. *Id*. In other words, while the Court will not permit a complete retrial of the sanction during trial, it would be unfairly prejudicial—and amount to reversible error — if DatabaseUSA were not allowed to put on *some* evidence as to why, in its view, this database not longer exists. *Id*. So, the Court will deny Infogroup's motion to the extent that Infogroup seeks a mandatory adverse inference: the adverse inference will be permissive.

3

### D. Testimony of Sue Gardner

Infogroup moves to exclude the testimony of Sue Gardner, whom the defendants proffer as a copyright expert. Filing 404; *see* filing 405-2. Specifically, Infogroup asserts that Gardner is unqualified to opine on the matters to which her testimony is directed, that her methodology is not sufficiently reliable, and that her opinion includes legal conclusions that are not a proper subject for expert testimony. Filing 404 at 3-5. The Court agrees on each point.

The opinion of a qualified expert witness is admissible if (1) it is based on sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The expert's scientific, technical, or specialized knowledge must also assist the trier of fact to understand the evidence or determine a fact in issue. *Id.*

Those determinations, of course, depend upon the facts at issue. The elements of copyright infringement are (1) ownership of a valid copyright and (2) copying original elements of the copyrighted work. *Cy Wakeman, Inc. v. Nicole Price Consulting, LLC*, 284 F. Supp. 3d 985, 990 (D. Neb. 2018). Copying can be shown either by (1) direct evidence, or (2) access to the copyrighted material and substantial similarity between the copyrighted work and the allegedly infringing work. *Id.* As the Court understands Gardner's proffered testimony, it does not implicate direct evidence (and, as explained below, the few opinions she does proffer that might relate to direct evidence are not appropriate expert testimony). So, her opinions relate to substantial similarity.

Determination of substantial similarity involves a two-step analysis. *Id.* at 991. There must be substantial similarity both of ideas and of expression.

*Id*. Similarity of ideas is evaluated extrinsically, focusing on objective similarities in the details of the works. *Id*. If the ideas are substantially similar, then similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression. *Id*. In other words, the Court must first consider whether the general idea of the works is objectively similar (the "extrinsic" portion of the test) and then determine whether there is similarity of expression (the "intrinsic" portion of the test). *Id.*

As a general matter, expert opinion evidence *may* be admissible in connection with the first step of the substantial similarity analysis to show similarity of ideas. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987). But analytical dissection and expert opinion are not called for under the second step in which substantial similarity of expression is measured by a different standard—the response of the ordinary, reasonable person. *Id.*

Gardner is the "Scholarly Communications Librarian" at the University of Nebraska-Lincoln. Filing 405-2 at 3. That job requires her to, among other things, advise patrons regarding copyright infringement, and occasionally to train faculty, staff, and students at UNL regarding copyright. Filing 405-2 at 3. Her educational experience includes graduate-level work in copyright from Harvard Law School. Filing 405-2 at 4. In addition, Gardner has graduate-level education in XML (a data markup language) instruction in research data management, and undergraduate education in computer programming. Filing 405-2 at 4. And she has extensive experience with database creation, in connection with library catalogs. Filing 405-2 at 4.

To be clear: the Court has no reason to question Gardner's competency, or her expertise in either copyright law or databases. But her opinions about copyright law are not a proper subject for expert testimony, and her opinions

5

regarding the parties' databases are primarily premised on evidentiary deficiency, which is also not a proper subject for expert testimony. But explaining that will require examining her opinions in more detail.

1. Whether Infringement was Committed

To begin with, Gardner was asked whether she had "an opinion regarding whether any infringement was committed by Database in any of the copyrights held by Infogroup and identified in the claims it asserts." Filing 405-2 at 12. Gardner answered that question by addressing three types of alleged infringement discretely: (a) computer code, (b) databases, and (c) websites.

(a) Computer Code

First, Gardner opined that she did "not see any evidence of copyright infringement" of computer code by DatabaseUSA.com. Filing 405-2 at 14. But the essential basis for that opinion was that DatabaseUSA.com uses "off-the-shelf" software and that DatabaseUSA's employees explained their "database development workflows" to her. Filing 405-2 at 14. So, Gardner concluded that because Infogroup creates its own software but "DatabaseUSA modifies periodically-updated third-party software using intricate workflows . . . there is no conceivable way the two software suites" could be identical or substantially similar. Filing 405-2 at 14-15. But that's, in essence, just Gardner's opinion that DatabaseUSA's witnesses are credible—and that's not a proper basis for expert opinion testimony. *See Nichols v. Am. Nat. Ins. Co., 154 F.3d 875, 884 (8th Cir. 1998).*[1]

---

[1] Nor, the Court notes, is there a clear connection between Gardner's primary expertise in computer coding—an undergraduate course in Pascal programming—and the opinions

Gardner further grounds her opinion in the lack of evidence[2] that the particular software copyrighted by Infogroup was infringed—that is, that the versions copyrighted (which she says are "presumably" modified regularly) were also the ones infringed. Filing 405-2 at 15. And, she notes, a particular section of code named "origin" is unremarkable because that's a common name for a portion of code. Filing 405-2 at 15. Perhaps so. But it seems fairly self-evident that an opinion about whether computer code was copied requires examination of the code. That could cut both ways: there may at some point be a question, for the Court or the jury, whether Infogroup met its burden of proof, with either direct evidence of copying or circumstantial evidence of some kind. But Gardner's proffered testimony is really just an opinion regarding the sufficiency of Infogroup's evidence, and that's not admissible.

(b) Databases

Next, Gardner opines that the evidence is insufficient to show that Infogroup's copyrighted business database was infringed. Filing 405-2 at 16. But the basis for that begins with examining the superficial features of each database's interface. Filing 405-2 at 16. The Court is not persuaded that choices of color and typeface are an appropriate part of the methodology for assessing whether a copyrighted database has been infringed. Nor is the Court persuaded that Gardner—who has demonstrated no particular expertise with

---

rendered here regarding software development. *See* Gable v. Nat'l Broad. Co., 727 F. Supp. 2d 815, 833 (C.D. Cal. 2010), *aff'd sub nom.* Gable v. Nat'l Broad. Co., 438 F. App'x 587 (9th Cir. 2011); c*ompare, e.g.,* SAS Inst., Inc. v. World Programming Ltd., 874 F.3d 370, 384 (4th Cir. 2017), *with* Montgomery v. Noga, 168 F.3d 1282, 1303 (11th Cir. 1999).

[2] Gardner reviewed a quantity of the evidence generated by discovery. Filing 405-2 at 27.

such design—is qualified to opine on such a basis, even if it was proper. *See Honeywell Int'l Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 1008-09 (D. Minn. 2014). Gardner does note differences in the search results in the databases with an example search query—but then, without explaining the relevance of those differences, swings back to differences in the interface, not the data. Filing 405-2 at 17-18.

Gardner also, as above, expresses her opinion on the sufficiency of Infogroup's evidence.[3] Gardner is unpersuaded that infringement occurred, without evidence of congruency in the databases or evidence showing that the presence of Infogroup seeds in DatabaseUSA's data wasn't fairly compiled. Filing 405-2 at 19. But again, Gardner's opinion as to whether Infogroup's evidence is sufficient to carry its burden of proof isn't a question for an expert witness. *See Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006).

(c) Websites

Finally, Gardner opines that DatabaseUSA.com didn't infringe Infogroup's websites. Filing 405-2 at 21-23. But as noted above, Gardner isn't an expert on website design. *See Honeywell*, 45 F. Supp. 3d at 1009. An expert in website design might be able to proffer testimony helpful to the trier of fact about whether two websites, for instance, were similar in ways unnecessary for functionality, or had unusual common features. *Cf. Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 945 (8th Cir. 1992). But Gardner has no such relevant experience. *See Gable*, 727 F. Supp. 2d at 833; *see also Honeywell*, 45 F. Supp. 3d at 1009.

---

[3] Or, at least, the evidence she reviewed. The Court assumes, for purposes of this order, that any relevant evidence was disclosed to the defendants and shown by them to Gardner.

### 2. Likelihood to Cause Confusion

Next, Gardner was asked for an opinion "concerning whether any actions of Database would be likely to cause confusion with Infogroup or related company products." Filing 405-2 at 23. But that's a subject that Eighth Circuit precedent squarely precludes from being the subject of expert testimony. *See Hartman*, 833 F.2d at 120; *see also Rottlund*, 452 F.3d at 731-32; *Honeywell*, 45 F. Supp. 3d at 1008-09.

### 3. Whether Truthful Statements Violate Copyright

Finally, Gardner was asked: "Assuming it is true that Vinod Gupta was, in fact, the founder of both Infogroup and the involved subsidiaries or affiliates, is the repetition of truthful statements to this effect an infringement on any copyright?" Filing 405-2 at 24. Gardner's response was that they weren't, because "facts are not copyrightable." Filing 405-2 at 24. But that's a legal conclusion, premised on Gardner's knowledge of copyright law. It may be an accurate conclusion, but it's one for the Court to make—or, if there are factual disputes, for the jury to make, but after instruction from the Court, not an expert witness. *See Honeywell*, 45 F. Supp. 2d at 1010.

In sum, for the reasons explained above, the Court finds that Gardner's proffered opinions are inadmissible, either because she is intended to opine on matters that are not proper subjects for expert testimony, or because she lacks foundation to render those opinions. Infogroup's motion in limine seeking to preclude Gardner's testimony will be granted.

### E. Testimony of Michael O'Hara

Infogroup moves to exclude the testimony of Michael O'Hara. Filing 404 at 3. Infogroup objects to the portions of O'Hara's testimony which require

technical or specialized knowledge. In particular, Infogroup contends that O'Hara has no education or experience "in creating, compiling, maintaining, securing, licensing or purchasing a commercial business database[s]," nor does he possess any particularized knowledge "in creating computer code that supports a commercial business database" and as such, should be prohibited from testifying on those topics.

The Court is not persuaded. The opinion of a qualified expert witness is admissible if (1) it is based on sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The expert's scientific, technical, or specialized knowledge must also assist the trier of fact to understand the evidence or determine a fact in issue. *Id*. And O'Hara—who holds his Ph.D. in economics—has significant experience in the compilation, evaluation, and protection of databases. Filing 405-3 at 1. Specifically, O'Hara has studied the methods of "implanting information in a database to 'mark' it with a compiler's imprint for security sources." Filing 405-3 at 1. Thus, subject to proper foundation at trial, the Court finds that O'Hara possesses the requisite knowledge, expertise, and training, to testify to the process of data compilation and seeding. Filing 405-3 at 2-3. DatabaseUSA's motion will be denied at this point. The Court will, however, hear any renewed foundational objections at trial.

### F. Parties' Agreed Upon Motions

The parties also agreed, on the record, that certain motions in limine should be granted. Specifically, the parties agreed that any reference to statements made or offers exchanged in settlement and mediation discussions, any claims previously dismissed or settled in this litigation, any previous Court

orders entered in this case, the lawsuit between DatabaseUSA and former employee John Gorum, and the testimony of any representative of Lutz & Co. will not be presented. *See* filing 404 at 1-3. Accordingly, those motions will be granted.

### G. Remaining Motions

Any remaining motions not yet ruled upon are overruled without prejudice to reassertion at trial.

## II. DATABASEUSA'S MOTIONS

### A. Vinod Gupta

DatabaseUSA moves to exclude any evidence of defendant Vinod Gupta's past misconduct. Specifically, DatabaseUSA seeks to preclude any reference to the 2008 Securities Exchange Commission ("SEC") litigation, the SEC order prohibiting Gupta from serving as an officer or director of a publicly traded company, the shareholder litigation initiated against Gupta in his former capacity as officer or director of Infogroup, the 2011-12 state litigation, and any evidence of the financial circumstances surrounding Gupta's departure from Infogroup Filing 338 at 2-4. According to DatabaseUSA, whatever relevance this evidence may have is outweighed by its unfair prejudice. Fed. R. Evid. 403. Infogroup, on the other hand, argues that this information is relevant so the jury may adequately understand *why* Infogroup entered into a contractual agreement to separate itself from Gupta (and why Infogroup paid Gupta a lot of money to disassociate himself with the company).

And while the Court agrees that *some* reference to this evidence is relevant, the Court also finds that allowing the introduction of the substantive

11

allegations underlying these proceedings would be unfairly prejudicial. Fed. R. Evid. 403. So, the Court will draw a line: evidence that various complaints were filed, the *general* allegations contained in those complaints, evidence that these allegations made national news, and the *total* sum paid to Gupta by Infogroup will be admissible, <u>but</u> evidence of the substance and nature of the misconduct giving rise to those events is not admissible. By way of example, evidence that the SEC filed a complaint alleging that Gupta failed to properly disclose related party transactions and materially understated Gupta's compensation is admissible, but evidence that Gupta purportedly misused corporate jets, or was improperly reimbursed (to the tune of $9.5 million) for expenses associated with his personal use of yachts, homes, automobiles, credit cards, and country club memberships is not admissible.

The Court will, of course, give an appropriate limiting instruction regarding the permissible purpose of this evidence. The Court will also hear any relevance objections made at trial.

Relatedly, DatabaseUSA seeks to exclude "evidence of any relationship between Vinod Gupta or [] DatabaseUSA.comLLC and William J. Clinton, former President of the United States or former U.S. Secretary of State, Hillary Clinton" and any similar relationships with political figures. DatabaseUSA also seeks to exclude any evidence that legal services were provided to Mr. Gupta by "Chief Justice John Roberts' law firm." Filing 338 at 4. Whatever minimal relevance this evidence may have, it is outweighed by its unfair prejudice. Fed. R. Evid. 403.

So, the Court <u>will grant</u> that motion in limine in part, and deny it in part, as set forth above.

### B. Robert Smith's Twitter Account

DatabaseUSA seeks to exclude evidence of DatabaseUSA employee Robert Smith's "personal Twitter account." Filing 338 at 5. In particular, DatabaseUSA objects to the introduction of evidence that Mr. Smith published a short video to his personal Twitter account that referenced Salesgenie—a name DatabaseUSA was prohibited from using by the 2012 settlement agreement. But neither party could satisfactorily articulate the relevance or prejudice of this evidence on the record. In light of that, the Court <u>will grant</u> that motion as it is likely to confuse the issues and in turn, confuse the jury. *See* Fed. R. Evid. 403.

### C. Alleged Non-Disclosure of Evidence

DatabaseUSA objects to the presentation of evidence that was not previously disclosed in discovery. Filing 407 at 1-3; *see also* filing 407 at 6-7. In particular, DatabaseUSA seeks to exclude all exhibits concerning liability other than those disclosed at the May 27, 2018 deposition, filing 406 at 1-2, and all damages evidence that was not disclosed at John Hofman's deposition, *see* filing 406 at 1. DatabaseUSA also seeks to exclude evidence of "any alleged infringement on any copyrighted computer code" because, it claims, Infogroup has not disclosed the copyrighted material allegedly infringed. Filing 407 at 6.

The Court notes that the purpose of discovery is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). And the Court is unsure why (both sides) have failed to disclosed pertinent information to one another. But, the Court cannot address whether evidence was, in fact, properly disclosed without

knowing exactly what that evidence might be. So, with the exception of the Rule 26 objections that are pending, this motion is denied. The Court is to be advised *at least 24 hours* in advance of its introduction at trial that an exhibit was not disclosed in accordance with Rule 26. The Court will, after sufficient review, make its ruling.

### *D. Third-Party Complaints*

DatabaseUSA moves to exclude "[a]ll evidence concerning complaints by customers or prospective customers or vendors that they [were] confused or misled by statements or advertisements of defendants or their representatives." Filing 407 at 8. The Court cannot, however, consider whether any evidence is hearsay, or subject to a hearsay objection, without hearing the context of such evidence, and in particular whether any foundation has been laid for an exception to the hearsay rule. So, DatabaseUSA's motion is denied without prejudice to objection at trial.

### *E. Disparaging Statements*

DatabaseUSA seeks to exclude any purportedly "disparaging" statements made by Mr. Gupta prior to March 17, 2012. Filing 406 at 2. But as the Court has already found, the relevant date for released claims is September 7, 2011. Filing 223 at 6. And Infogroup represents no intent to adduce evidence of disparaging statements made before *that* date. Accordingly, DatabaseUSA's motion in limine will be denied.

14

*F. Testimony of Amit Khanna*

DatabaseUSA moves to exclude the testimony of Amit Khanna. Filing 338 at 6-17. Khanna is a "hybrid witness"—that is, some of the topics Khanna will testify to involve scientific, technical, or other specialized knowledge, while other portions of his testimony will be based on Khanna's own personal knowledge and experience. DatabaseUSA objects to the portions of Khanna's testimony which require technical or specialized knowledge. In particular, DatabaseUSA contends that Khanna has "no knowledge or expertise concerning compilation or compilation methods," nor does he possess any particularized knowledge regarding "the use of seeds and triple verification process" and as such, should be prohibited from testifying on those topics. Filing 338 at 6-7.

The Court is not persuaded. The opinion of a qualified expert witness is admissible if (1) it is based on sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The expert's scientific, technical, or specialized knowledge must also assist the trier of fact to understand the evidence or determine a fact in issue. *Id.* And Khanna, the president of Local Marketing Solutions at Infogroup with a Master's degree in computer science, has over fifteen years of experience in data compilation techniques and database maintenance. Accordingly, subject to foundation at trial, the Court finds that Khanna possesses the requisite knowledge, expertise, and training, to testify to the process of data compilation and seeding. Filing 340-9 at 1. DatabaseUSA's motion will be denied at this point. The Court will, however, hear any renewed foundational objections at trial.

*G. Trade Secret Evidence*

DatabaseUSA seeks to exclude the admission of "all references to any alleged trade secret or misappropriation other than to [Infogroup's] customer list." Filing 406 at 2. On the record in the courtroom, Infogroup moved to dismiss its misappropriation of trade secrets claim in its entirety. The Court dismissed that claim with prejudice; and as such, that motion in limine is dismissed as moot.

*H. AEO Designations*

DatabaseUSA seeks to preclude the admission of any documents that are designated as "Attorneys' Eyes Only (AEO)". Filing 338 at 5-6, *see also* filing 407 at 12. The parties' agree that the proposed joint exhibit list does not include any documents which remain AEO. Accordingly, this motion is dismissed as moot.

*I. Remaining Motions*

Any remaining motions not yet ruled upon are overruled without prejudice to reassertion at trial.

IT IS ORDERED:

1. Infogroup's motion in limine (filing 404) is granted in part and denied in part as set forth above.

2. DatabaseUSA's motion in limine (filing 337) is granted in part and denied in part as forth above.

2.  DatabaseUSA's motion in limine (filing 406) is granted in part and denied in part as set forth above.

3.  Infogroup's misappropriation of trade secrets claim is dismissed with prejudice.

Dated this 10th day of August, 2018.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge