IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Infogroup, Inc., Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>DatabaseUSA.com LLC, a Nevada limited-liability company, and Vinod Gupta,<br><br>　　　　　Defendants. | 8:14-CV-49<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

　　　This matter is before the Court on Infogroup's claim against DatabaseUSA under the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq*. (UDTPA). The Court's findings of fact and conclusions of law with respect to Infogroup's UDTPA claim are as follows.

　　　The UDTPA sets forth a lengthy list enumerating the "deceptive trade practices" actionable under the UDTPA. *See* § 87-302(a). In particular, and at issue here,

> [a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she . . . [c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; [or] [c]auses likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another . . . .

§ 87-302(a)(2) & (3). It is also a deceptive trade practice to "represent[] that goods or services have sponsorship [or] approval" that they do not actually have. § 87-302(a)(5).

Infogroup alleges that DatabaseUSA engaged in deceptive trade practices by making various statements suggesting that DatabaseUSA's product is actually provided by—or at least associated with—Infogroup. *See* filing 415 at 11. Generally speaking, Infogroup's claims of deceptive trade practices fall into one of two categories: (1) DatabaseUSA's distribution of various marketing materials misconstruing the history of DatabaseUSA; and (2) DatabaseUSA's statements to Infogroup's customers thanking them for being a "loyal" DatabaseUSA customer.

With respect to the former category, Infogroup introduced evidence at trial demonstrating that on a handful of occasions, DatabaseUSA suggested it has been operating in the business database industry longer than is actually true. For instance, in 2012 some of DatabaseUSA's marketing materials suggested that DatabaseUSA had been a database "leader[] since 1972." Exhibit 81. Similarly, in 2013, DatabaseUSA's website suggested that the "roots of DatabaseUSA go back to 1972" and had been "Helping Businesses Grow since 1972." *See* Exhibit 85, 89. And in 2015, DatabaseUSA distributed marketing materials stating that DatabaseUSA was the "original compiler of business databases." Exhibit 93.

Infogroup also claims that on at least three occasions, DatabaseUSA sent discount codes to Infogroup customers thanking them for their "loyal" service. In particular, in early 2014, one Infogroup customer received an advertisement offering 5,000 free names for being a "loyal customer." Exhibit 91. Later in 2014, a separate customer received an email offering a "50% Loyal Customer Discount." Exhibit 92. And in 2017, a "loyalty" email was sent to an Infogroup

2

customer offering a 50 percent discount on that customer's next mailing list purchase "for being our very loyal customer." Exhibit 95.

Those statements and advertisements, Infogroup says, misled customers to believe that DatabaseUSA's products were somehow affiliated with Infogroup. But even assuming those allegations are true, the Court finds no merit to Infogroup's UDTPA claim. After all, the UDTPA provides only for equitable relief. *See State ex rel. Stenberg v. Consumer's Choice Foods, Inc., 755 N.W.2d 583, 587 (Neb. 2008)*. Injunctive relief can be sought by a "person likely to be damaged by a deceptive trade practice of another[,]" and the Court may order additional equitable relief if necessary "to protect the public from further violations[.]" § 87-303. In other words, equitable relief is only appropriate when there is some risk of future harm.

And here, even if Infogroup made some misleading statements in the past, there is a lack of sufficient evidence that any such practice is ongoing. In fact, the last evidence of any misleading advertisements or confusing customer solicitation dates back to early 2017. *See* exhibit 95.[1] Simply put, whatever DatabaseUSA did is done: there is no evidence that Infogroup is likely to be further damaged, nor sufficient evidence that the public requires protection.[2]

---

[1] The Court is aware of later uses of such language as "[t]he roots of DatabaseUSA.com go all of the way back to 1972," but such remarks are not misleading when placed in a context that makes the disassociation of the parties clear. *See* exhibit 305.

[2] The Court recognizes that post-judgment motions are likely to be filed by the defendants in this case. Nothing in these findings of fact or conclusions of law should be read as indicating how the Court would rule on such motions, if they are filed, because they would present different issues under a different standard of review. It is, in fact, entirely possible for the Court as the trier of fact to find that a claim has not been proved by a preponderance of the evidence, yet also conclude that a jury's finding on a related claim was supported by sufficient

While DatabaseUSA would be well-advised to scrupulously avoid potentially misleading statements, such as references to the company's history dating to 1972, the Court finds insufficient evidence in the record to warrant prospective relief—and, of course, the jury's verdict in this case should itself provide a substantial disincentive for any such conduct.

So, the Court will dismiss Infogroup's UDTPA claim.

IT IS ORDERED:

1. Infogroup's UDTPA claim is dismissed.

2. A separate judgment will be entered.

Dated this 29th day of August, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge

---

evidence, given the deference that a jury's findings deserve. Those motions have not yet been filed and that bridge is to be crossed at a later date.